**UNITED STATES of America,<br>Plaintiff–Appellee,**

v.

**Bobby PERKINS, Defendant–Appellant.**

No. 95–5604.

United States Court of Appeals,<br>Sixth Circuit.

Argued Feb. 2, 1996.

Decided July 17, 1996.

---

James E. Arehart, Assistant U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Lexington, KY, for Plaintiff–Appellee.

Stephen W. Owens (argued and briefed), Owens & Wright, Pikeville, KY, for Defendant–Appellant.

Before: NORRIS and MOORE, Circuit Judges; MILES, District Judge.[*]

MOORE, Circuit Judge.

Appellant Bobby Perkins appeals his sentence on the grounds that the district court engaged in improper double counting by increasing his base offense level for four specific offense characteristics under section 2B3.1(b) of the United States Sentencing Guidelines ("Sentencing Guidelines"). Finding no error, we affirm Perkins's sentence.

I

On March 16, 1994, Perkins and another individual robbed the Family Pharmacy in

---

[*] The Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation.

South Williamson, Kentucky, which was owned and operated by Larry Barnett. Upon entering the store, Perkins approached Barnett's son, Bradley, who was helping stock the store shelves, and forced him at gunpoint to the pharmacy area at the back of the store where his father was working. Perkins's cohort, who also had a gun, bound and gagged Bradley with duct tape. Perkins then had Barnett turn off the lights to the pharmacy and forced him to fill a shipping crate with controlled substances. Meanwhile, Perkins struck Barnett in the head with the pistol and told him that he would be killed if he did not speed up. Once the crate was filled, Perkins bound and gagged Barnett with duct tape and kicked him in the face before leaving the store.

On June 8, 1994, a federal grand jury sitting in the Eastern District of Kentucky returned a three-count indictment charging Perkins with one count of armed robbery of a pharmacy, in violation of 18 U.S.C. § 2118(a) and (c)(1) ("Count One"); one count of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Two"); and one count of possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) ("Count Three"). Perkins pleaded guilty to Count One.

The district court concluded that Perkins had a total offense level of 28. To arrive at this offense level, the district court imposed a base offense level of 20 under U.S.S.G. § 2B3.1; a six-level increase under U.S.S.G. § 2B3.1(b)(2)(B) based on Perkins's possession of a firearm during the offense which was "otherwise used," i.e., to threaten and assault the victims; a two-level increase under U.S.S.G. § 2B3.1(b)(3)(A) based upon Perkins's causing bodily injury by striking Barnett on the head; a two-level increase under U.S.S.G. § 2B3.1(b)(4)(B) based on the fact that the victims were "restrained," i.e., bound and gagged; a one-level increase under U.S.S.G. § 2B3.1(b)(5) because Perkins stole controlled substances; and a three-level decrease under U.S.S.G. § 3E1.1 for acceptance of responsibility. Since Perkins had a criminal history category of I, his total of-

fense level of 28 resulted in a sentencing range of 78 to 97 months.

Before the sentencing hearing, Perkins submitted one written objection to the Presentence Investigation Report ("PSR"), arguing that paragraphs 23 and 24 increased his sentence twice for "basically the same behavior" by adding two levels under section 2B3.1(b)(3)(A) because bodily injury resulted when Perkins struck Larry Barnett in the head with a pistol during the robbery and two levels under section 2B3.1(b)(4)(B) because Perkins bound and gagged both victims during the offense. *See* J.A. 29. At the sentencing hearing, Perkins repeated the same objection to double counting in paragraphs 23 and 24 of the PSR, but he also lodged two additional objections. Perkins argued that it would be improper to apply a two-level increase "for each of those paragraphs [i.e., paragraphs 23 and 24], especially in light of the 6 level increase that's given in paragraph 22." J.A. 42. This was Perkins's first reference to paragraph 22 of the PSR, which addressed the six-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(B) based upon the fact that a firearm was "otherwise used" during the offense. After the district court made findings and essentially adopted the facts and recommendations contained in the PSR, Perkins interposed one additional objection:

> Paragraph 25 I believe involves—would involve double counting, and the base offense level which is in paragraph 21, the information that the government relied upon was to reach a base offense level. I don't think they ever reached an amount that was reasonably foreseeable, and we would simply object to that.

J.A. 46. Paragraph 25 of the PSR assessed a one-level increase for theft of controlled substances under U.S.S.G. § 2B3.1(b)(5).

The district court rejected Perkins's objections and sentenced him on April 27, 1995 to 78 months imprisonment to be followed by three years of supervised release. The district court also granted the government's motion to dismiss Counts Two and Three.

## II

As a preliminary matter, we must consider whether Perkins properly preserved his double-counting argument with respect to all four increases under section 2B3.1(b). *See United States v. Tosca*, 18 F.3d 1352, 1355 (6th Cir.1994) (defendant who fails to object to an error at sentencing forfeits his or her right to assert the error on appeal). The government argues that the only issue properly preserved for appeal is the one set forth in Perkins's written objection and that we should not consider objections Perkins raised for the first time at the sentencing hearing. Federal Rule of Criminal Procedure 32 provides that "[w]ithin 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report." Fed.R.Crim.P. 32(b)(6)(B). But "[f]or good cause shown, the court may allow a new objection to be raised at any time before imposing sentence." Fed.R.Crim.P. 32(b)(6)(D). The "Sentencing Procedures" section of the guidelines provides that "[c]ourts should adopt procedures to provide for the timely disclosure of the presentence report; the narrowing and resolution, where feasible, of issues in dispute in advance of the sentencing hearing; and the identification for the court of issues remaining in dispute." U.S.S.G. § 6A1.2. Moreover, the Background notes to section 6A1.2 state that "[t]he potential complexity of factors important to the sentencing determination normally requires that the position of the parties be presented in writing. However, because courts differ greatly ... with respect to the feasibility of written statements under the guidelines, district courts are encouraged to consider the approach that is most appropriate under local conditions."

■ Although the district court did not make an explicit finding of good cause, it allowed the defendant to raise new objections at the sentencing hearing. With respect to the first objection, which reiterated the written objection but also opposed the six-level increase for "otherwise using" a firearm to threaten and assault the victims, the district court clearly considered the "objections" and overruled them on the merits. J.A. at 42–43. With respect to the second objection Perkins raised at the sentencing hearing, although the court did not discuss the merits of the objection, it appeared to accept the making of the new objection without reservation.[1] At least one circuit has declined to consider the merits of a sentencing issue on appeal where the district court "noted" an objection the government raised for the first time at the sentencing hearing but "made no finding of good cause permitting the government to raise a new objection at sentencing." *United States v. Hardwell*, 80 F.3d 1471, 1500 (10th Cir.1996). The *Hardwell* court explained that "[t]he court was not required to hear the government's new objection to the presentence report at sentencing." *Id.* However, in Perkins's case, neither the district court nor the government indicated at the sentencing hearing that any objection came too late or that additional time was necessary to formulate a response. *See* Advisory Committee Notes to 1994 Amendments to Rule 32(b)(6)(B) (stating that the deadlines and procedures in Rule 32(b)(6) are "intended to maximize judicial economy by providing for more orderly sentencing hearings while also providing fair opportunity for both parties to review, object to, and comment upon, the probation officer's report in advance of the sentencing hearing"). If we found that Per-

---

1. The transcript reveals the following exchange, which occurred after the district court summarized the calculations in the PSR:

THE COURT: Like to talk about what I should do in regard to this matter under the guidelines?

MR. OWENS: Your Honor, I had one further thing I would like to point out, if I may.

THE COURT: Yes, sir.

MR. OWENS: Paragraph 25 I believe involves—would involve double counting, and the base offense level which is in paragraph 21, the information that the government relied upon was to reach a base offense level. I don't think they ever reached an amount that was reasonably foreseeable, and we would simply object to that.

THE COURT: All right.

J.A. at 46. There was no further discussion of this objection, and the district court sentenced Perkins according to the calculations in the PSR.

kins did not preserve his second objection, we would create a requirement that the party raising an objection to the PSR for the first time at the sentencing hearing must either request that the district court make an explicit finding of good cause to consider a new objection or supply the reasons supporting a good cause finding. Such a requirement would not advance the purposes underlying Rule 32(b)(6) at least when, as in this case, the opposing party fails to argue that the objection is untimely. *See* Advisory Committee Notes to 1994 Amendments to Subdivision (b) ("Under the amendment, the parties would still be free at the sentencing hearing to comment on the presentence report, and in the discretion of the court, to introduce evidence concerning their objections to the report."). Therefore, we conclude that Perkins sufficiently preserved the issues on appeal even with respect to objections his attorney raised for the first time at the sentencing hearing.[2]

### III

Pursuant to section 2B3.1(b) of the Sentencing Guidelines, the district court increased Perkins's sentence for several specific offense characteristics:

(1) six levels under U.S.S.G. § 2B3.1(b)(2)(B) for possession of a firearm which was otherwise used to threaten and assault the victims;

(2) two levels under U.S.S.G. § 2B3.1(b)(3)(A) for striking a victim in the head and causing bodily injury;

(3) two levels under U.S.S.G. § 2B3.1(b)(4)(B) for physically restraining the victims by binding and gagging them in order to facilitate commission of the offense; and

(4) one level under U.S.S.G. § 2B3.1(b)(5) for theft of controlled substances during the offense.

Perkins claims that the district court improperly double counted or triple counted the same conduct by adding these increases to his base offense level. Since Perkins chal-

lenges only whether the district court properly applied the Sentencing Guidelines and does not challenge the district court's findings of fact, the issues on appeal are questions of law, which we review de novo. *United States v. Partington,* 21 F.3d 714, 717 (6th Cir.1994). We hold that the district court did not err by imposing multiple increases under section 2B3.1(b) because each of the increases imposed is listed separately as a specific offense characteristic and penalizes distinct aspects of Perkins's conduct.

The first increase, under section 2B3.1(b)(2)(B), for otherwise using a firearm to threaten or assault the victim, applies because Perkins forced one victim to the rear of the store at gunpoint and told another victim he would kill him if he did not increase his speed in placing drugs into the crate, a threat Perkins reinforced by hitting the victim on the head with the gun. " 'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, application note 1(g). This increase, by itself, cannot constitute double counting because every robbery need not involve possession of a firearm, nor its use against the victim. The Background commentary to section 2B3.1 provides that "[p]ossession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancements where these factors are present." Consequently, the base offense level for robbery may be increased for the use of a gun. *United States v. Blake,* 59 F.3d 138, 139 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 580, 133 L.Ed.2d 502 (1995).

The second increase, under section 2B3.1(b)(3)(A), applies because the victim sustained "bodily injury," defined as "any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which

---

**2.** The government also complains that Perkins's objections were vague and unintelligible. We recognize that some of Perkins's objections were somewhat opaque. Although we do not diminish the importance of making clear, specific objections, we hold that Perkins sufficiently preserved his arguments for appeal.

medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, application note 1(b). In the instant case, bodily injury resulted when Perkins hit the victim in the head with a gun and kicked him in the face. Perkins argues that this conduct is the same as the conduct underlying the first increase for "otherwise using" a firearm to threaten or assault the victim. However, the basis for this enhancement is not the striking of the victim in the head, as Perkins suggests; rather, it is the fact that doing so caused physical injury. Thus, the enhancement for causing "bodily injury" is premised upon a particular result, not the defendant's conduct. It penalizes the defendant based on the severity of the outcome (i.e., two levels for bodily injury, four levels for serious bodily injury, and six levels for permanent or life-threatening bodily injury). *See* U.S.S.G. § 2B3.1(b)(3). Moreover, section 2B3.1(b)(3) specifically contemplates the cumulative application of increases to the defendant's offense level for weapon involvement and for bodily injury by providing that "the cumulative adjustments from [subsections] (2) and (3) shall not exceed 11 levels." *See also* U.S.S.G. § 2B3.1, application note 4 ("The combined adjustments for weapon involvement and injury are limited to a maximum enhancement of 11 levels."). Therefore, the district court did not engage in impermissible double counting by imposing enhancements both for otherwise using the gun and for causing bodily injury.[3]

■ The third increase, under section 2B3.1(b)(4)(B), applies because Perkins physically restrained the victims during the robbery by binding and gagging them with duct tape to facilitate the commission of the offense. "Physical restraint" is defined as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, application note 1(i). Perkins claims that the "binding and gagging" and the "striking" of the victims was a "continuous course of conduct." We reject Perkins's theory. Although "the use of force or fear

may be an element of the core offense conduct of robbery, ... physical restraint is not an element of the offense of robbery. 'Were it otherwise, the Guidelines would not list physical restraint in § 2B3.1 as a specific offense characteristic for robbery.'" *United States v. Rosario*, 7 F.3d 319, 321 (2d Cir. 1993) (quoting *United States v. Doubet*, 969 F.2d 341, 347 (7th Cir.1992)). Moreover, the Sentencing Guidelines list enhancements for distinct and separate acts of violence in order to impose punishment based on the severity of the defendant's conduct. *See* U.S.S.G., Ch. 1, Pt. A, at 2 (1993) (providing, under the policy statement describing the "Basic Approach" of the guidelines, that "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity"). Furthermore, the general application principles for the Sentencing Guidelines provide that as a default rule, specific offense characteristics should be applied cumulatively:

> The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used.

U.S.S.G. § 1B1.1, application note 4.

■ The fourth increase, under section 2B3.1(b)(5), for theft of controlled substances, also does not constitute improper double counting. Perkins argues that the "amount of the controlled substances was necessarily included in the benchmark for setting the base level for this very offense." Perkins's contention is meritless because the base offense level for robbery under section 2B3.1(a) does not include amount of loss to the victim (i.e., the value of the drugs stolen). There is a separate specific offense characteristic enhancement based on the dollar amount of the loss, but it is not limited to the theft of controlled substances. *See* U.S.S.G. § 2B3.1(b)(6). Perkins did not in fact re-

---

**3.** Although the calculations in PSR, which the district court adopted in its judgment, J.A. 16, did not specifically rely on the injury caused by kicking in assessing a two-level increase pursuant to section 2B3.1(b)(3)(A), the PSR states that after Perkins bound and gagged Barnett with duct tape, Perkins kicked him in the face. J.A. at 22. Therefore, the injury caused by kicking Barnett in the face could provide an alternative basis for the bodily injury enhancement.

ceive an enhancement for the amount of the loss since the seven thousand dollars attributed to his robbery was less than the ten thousand dollar minimum amount that triggers that enhancement. Moreover, the increase for theft of controlled substances, firearms, or destructive devices under section 2B3.1(b)(5) reflects an increased risk of harm based on the nature of the item stolen, whereas the increase in offense level based on the amount of the loss reflects the value of the property stolen. Applying both increases would not amount to improper double counting.

Although the parties have cited no case directly on point, the Ninth Circuit has addressed a double-counting issue under an analogous provision, section 2B3.1(b)(1), which provides for a two-level enhancement if property of a financial institution or post office is taken, or if the offense involves carjacking. *See United States v. Alexander,* 48 F.3d 1477, 1492 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995); *see also United States v. Bond,* 22 F.3d 662, 670 (6th Cir.1994) (where the defendant received cumulative points under section 2B3.1(b)(1) because a financial institution was involved, under section 2B3.1(b)(2)(A) for the discharge of a firearm, and under section 2B3.1(b)(3) for bodily injury). In *Alexander,* the defendant argued that double counting resulted where the district court applied both the enhancement under section 2B3.1(b)(1) for robbery of a financial institution, as well as another three-point enhancement for a monetary loss exceeding $250,000 under section 2B3.1(b)(6)(D). The court held that application of these two enhancements to the defendant's base level for robbery did not amount to double counting because, while section 2B3.1(b)(6) was intended to reflect only the amount taken, section 2B3.1(b)(1) concerned the type of institution robbed, a relevant factor since financial institutions are traditionally prime targets of robbery. *Alexander,* 48 F.3d at 1492. Similarly, in the instant case, the enhancement under section 2B3.1(b)(5) is geared toward punishing more

severely thefts involving firearms or controlled substances regardless of the amount stolen, because such property is a prime target of theft and/or because additional violence or harm may result when these types of property are stolen.

Perkins relies on *United States v. Romano,* 970 F.2d 164 (6th Cir.1992), to support his double-counting arguments, but his reliance is misplaced. In *Romano,* the Sixth Circuit held that there is a default presumption against double counting under the Sentencing Guidelines, absent a specific provision to the contrary:

> [I]f certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for that same conduct again under a separate provision whether or not the Guidelines expressly prohibit taking the same conduct into consideration under two separate provisions.

*Id.* at 167. *Romano* has been abrogated by an amendment to the Sentencing Guidelines effective November 1, 1993, which provides that "[a]bsent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively (added together). For example, the adjustments from § 2F1.1(b)(2) (more than minimal planning) and § 3B1.1 (aggravating role) are applied cumulatively." U.S.S.G. § 1B1.1, application note 4; *see also United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996) (holding that *Romano* has been abrogated by the amendment to the Sentencing Guidelines). Since Perkins committed the instant offense in March of 1994, the amendment applies here.[4] Furthermore, in contrast to the instant case, the *Romano* court based its holding on the absence of a clear expression of legislative intent. More importantly, *Romano* is distinguishable because the two enhancements at issue in that case were from different chapters of the Sentencing Guidelines, whereas the instant case involves specific offense characteristics within the same guideline provision. *Romano,* 970 F.2d at 167 (holding

---

**4.** The PSR indicates that the 1993 version of the Sentencing Guidelines was used to compute Perkins's sentence. That version incorporates

guideline amendments effective November 1, 1993.

that because more than minimal planning is required to be an organizer or leader of a criminal activity involving five or more persons, the defendant should not have received an enhancement under both sections 3B1.1(a) and 2F1.1(b)(2)). This distinction is of paramount importance here because, as indicated above, the guidelines explicitly provide that "offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S.S.G. § 1B1.1, application note 4.

In the instant case, the conduct warranting the enhancement for physical restraint (binding and gagging) is distinct from the conduct supporting the other enhancements involving use of the gun; therefore, the district court did not double count by increasing Perkins's sentence based on each type of conduct. Furthermore, no double counting occurs where, although the conduct underlying two enhancements is the same, a single guideline provision requires the district court to increase the defendant's sentence based on different *aspects* of the defendant's conduct. In the instant case, the conduct supporting the enhancement for otherwise using a weapon (hitting the victim with a gun) is the same conduct that supports the bodily injury enhancement. Nonetheless, because one increase focuses solely on the defendant's conduct and the other increase focuses on the nature and degree of harm caused by the defendant's conduct, we hold that the district court did not err by imposing increases under both sections. *See United States v. Swoape,* 31 F.3d 482, 483 (7th Cir.1994) (upholding cumulative enhancements under U.S.S.G. § 2B3.1(b)(2)(A) based on the defendant's firing a shotgun in the course of fleeing a bank robbery, under U.S.S.G. § 2B3.1(b)(3)(B) based on the fact that the gunshot seriously injured the target, and under U.S.S.G. § 3A1.2(b) because the defendant knew the target to be a peace officer because each enhancement "responded to a separate aspect of [the defendant's] conduct"). The Sentencing Commission's express provision for cumulative application of the enhancements at issue pursuant to sections 2B3.1(b) and 1B1.1 of the Sentencing

Guidelines tailors the sentence based on the specific aspects and nature of the defendant's conduct and the harms produced. This is fully consistent with a system of "proportionality in sentencing ... that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G., Ch. 1, Pt. A, at 2 (1993).

Finding no error, we AFFIRM Perkins's sentence in all respects.