**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jason E. KUSHMAUL, Defendant–
Appellant.**

**No. 97–1163.**

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1998.

Decided June 19, 1998.

Jeffrey E. Theodore (argued and briefed), Asst. U.S. Attorney, Office of the U.S. Attorney for the Western Dist. of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

Sharon A. Turek (argued and briefed), Federal Public Defenders Office, Grand Rapids, MI, for Defendant–Appellant.

Before: RYAN, COLE, and GILMAN, Circuit Judges.

**OPINION**

RYAN, Circuit Judge.

The defendant, Jason Kushmaul, appeals from the sentence imposed following his plea of guilty to robbery from a federally insured

bank, accompanied by assault with a dangerous weapon, in violation of 18 U.S.C. § 2113(a), (d). He contends that the district court incorrectly found that he had "otherwise used" a dangerous weapon in the course of the robbery, assigning him a four-level increase under the sentencing guidelines. We agree that this was error.

## I.

During the summer of 1996, defendant Jason Kushmaul and his friend Christopher Heal decided to "rob a bank." Their target was the Old Kent Bank in Barryton, Michigan. Early in the morning on August 23, 1996, Kushmaul and Heal, wearing sunglasses, hats, and masks, were hiding in shrubbery near the back door of Old Kent Bank. When the first bank teller arrived for work, Heal emerged from the bushes with a hunting knife visible in his hand. Kushmaul was close behind, carrying a 34-inch wooden baseball bat. They instructed the teller to open the door, and Kushmaul posted himself inside the bank, awaiting the next employee, because the first employee advised Kushmaul and Heal that two people were needed to open the vault.

Heal took the first teller to the front of the bank to guard her. When, about 15 minutes later, a second teller arrived, Kushmaul brought her to the front of the bank as well. The tellers dialed the combination lock for the vault, but informed Kushmaul and Heal that there would be a 15-minute delay. Kushmaul and Heal instructed the tellers to lie on their stomachs on the floor, and then bound them with duct tape. Kushmaul returned to the back of the bank to watch for any additional arriving employees.

The central question in this appeal involves Kushmaul's treatment of the third employee to arrive that morning. When this woman entered the bank and assessed the situation, she screamed. According to the presentence report prepared by the probation office, Kushmaul "physically forced [the teller] to the floor." And "[a]lthough he did not raise the bat as though he was going to hit her, he held it in one hand while pushing her to the floor with the other." Further, "[d]uring this confrontation, the victim recalls Kushmaul

stating, 'Shut-up [sic] and I won't hurt you[,]' or 'Be quiet and I won't hurt you.' " It is undisputed, however, that the employee suffered no significant physical injury as a result of this incident. Afterwards, she, like the others, was taken to the front of the bank and bound with duct tape.

A fourth employee arrived about 15 minutes later, and she too was taken to the front of the bank and bound. At about the same time, Heal successfully opened the vault and removed approximately $65,000, placing it in a garbage bag.

After stealing the car of one of the tellers, Kushmaul and Heal joined with Mark Ladd, their accomplice, who was waiting some distance away. On their way out of Barryton, they were spotted by state police, who began following them. They were quickly apprehended.

Kushmaul, Heal, and Ladd were indicted on one count of robbery from a federally insured bank, accompanied by assault with a dangerous weapon, in violation of 18 U.S.C. § 2113(a), (d), and one count of robbery from a federally insured bank, in violation of 18 U.S.C. § 2113(a).

Kushmaul pleaded guilty, and, from a range of 70 to 87 months, received a sentence of 78 months of imprisonment. In this appeal, the sole sentencing determination with which he takes issue concerns the district court's assignment of four levels for the specific offense characteristic of "otherwise us[ing]" a dangerous weapon, pursuant to U.S.S.G. § 2B3.1(b)(2)(D). Kushmaul argued that he was accountable only for "brandish[ing], display[ing], or possess[ing]" a dangerous weapon, pursuant to section 2B3.1(b)(2)(E), and therefore deserved only an additional three levels.

The district court observed that "[t]his case presents the interesting gray area of the weapon clearly being displayed and brandished but an assault otherwise having taken place by one of the perpetrators holding the dangerous weapon, that being the forcing to the ground of one of the tellers." The court found that the bat "was not used to physically strike the victim, [but] the weapon was held in one hand while the defendant physi-

cally pushed the victim to the floor." It concluded "that when a physical assault occurs by the perpetrator of a crime, in this case a bank robber, and the perpetrator is holding a dangerous weapon, the dangerous weapon is thereby utilized in connection with conduct that clearly goes beyond the simple robbery itself and such conduct then constitutes the otherwise use of a dangerous weapon, which constitutes or results in a four-level enhancement under 2B3.1(b)(2)(D)." The court further reasoned that

> a dangerous weapon can be otherwise used in a manner short of physically striking a victim with the dangerous weapon and still come within the logical and common sense meaning of "otherwise used."

> [A] dangerous weapon does not have to physically touch or strike a victim in order to be otherwise used in a manner which goes beyond brandishing, displaying, or possessing.

Kushmaul filed this timely appeal.

## II.

■ We give "due deference to the district court's application of the guidelines to the facts," 18 U.S.C. § 3742(e), and we review any actual findings of fact for clear error, *see United States v. Mills*, 1 F.3d 414, 421 (6th Cir.1993). However, we review *de novo* the district court's application of the sentencing guidelines when the application presents a purely legal question. *See United States v. Perkins*, 89 F.3d 303, 307 (6th Cir.1996). Here, the parties have no disagreement about the historical facts, or about the district court's recounting of those facts. Their disagreement is over the effect on Kushmaul's sentence those facts should have— that is, whether the agreed-upon facts amount to the brandishing of a weapon, or to a more serious "other[ ] use[ ]." Addressing this inquiry requires us to interpret the language and meaning of the guidelines. We are, therefore, faced with a legal question, and our review is *de novo*. *See United States v. Matthews*, 20 F.3d 538, 553 (2d Cir.1994); *United States v. Johnson*, 931 F.2d 238, 240 (3d Cir.1991); *United States v. Roberts*, 898 F.2d 1465, 1469 (10th Cir.1990);

*cf. United States v. Fuller*, 99 F.3d 926, 927 (9th Cir.1996).

## III.

The sentencing guidelines provide for the following increases to the base offense level for robbery, depending on the characteristics of the specific offense:

> (2) (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished, displayed, or possessed, increase by 5 levels; *(D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels;* or (F) if an express threat of death was made, increase by 2 levels.

U.S.S.G. § 2B3.1(b) (emphasis added). Elsewhere, the guidelines provide definitions, albeit not particularly useful ones, *see United States v. Hernandez*, 106 F.3d 737, 741 (7th Cir.1997), for "otherwise used" and "brandished":

> (c) "Brandished" with reference to a dangerous weapon (including a firearm) means that the weapon was pointed or waved about, or displayed in a threatening manner.
>
> . . . .
>
> (g) "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. § 1B1.1, comment. (n.1). The guidelines define a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury," *id.*, and Kushmaul does not argue that his baseball bat was something other than a dangerous weapon.

We have never addressed the distinction between brandishing and other uses in the 2B3.1 context, although we have construed the same language in the context of U.S.S.G. § 2A2.2(b)(2), covering aggravated assault. There, we rejected the defendant's argument

"that a weapon is not 'otherwise used' unless it is actually employed to intentionally inflict bodily injury." *United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir.1991). In *Hamilton,* the defendant held a knife against his victim's throat, simultaneously threatening to kill her and her children; later, he again "threatened her with the knife," and his victim was severely wounded while attempting to fend him off. *Id.* at 1127–28. This, we concluded, was conduct amounting to more than mere brandishing, and merited a four-level increase for "otherwise us[ing]" the knife.

But *Hamilton* does not provide much guidance for this case, as Kushmaul's actions are quite dissimilar. Kushmaul held his bat in one hand while pushing the bank employee down to the floor with the other. He never raised the bat or moved it any way, nor did the bat ever touch the employee. Although he verbally threatened the employee, by telling her to be quiet so as to remain unhurt, he did so without reference—verbal or physical—to the baseball bat. And likewise, although he did physically assault the employee, the assault was committed entirely independently of the bat. The assault and the threat, therefore, are conduct that are simply not relevant to an assessment of how Kushmaul used the weapon.

Kushmaul's actions actually amount to *less* than much of the commentary defining the three-level increase for brandishing; there was no pointing, waving about, or displaying of the bat in a threatening manner. But indisputably, Kushmaul "possessed" the bat, and it was "displayed," in the sense of being visible, and surely it would have some intimidating effect. There is, then, no question that a three-level enhancement would properly apply under U.S.S.G. § 2B3.1(b)(2)(E).

We conclude, however, that Kushmaul did not behave *more* culpably than described in 2B3.1(b)(2)(E), and therefore, a four-level increase was inappropriate. While it is clear that other courts have differed as to when the three or four-level increase is merited, we find none that would apply in the circumstances under consideration here. Several courts, as we did in *Hamilton,* have held that when a defendant actually points a weapon at a particular individual, and verbalizes an explicit threat to use the weapon, such conduct amounts to "otherwise us[ing]," rather than mere brandishing. *See Hernandez,* 106 F.3d at 741; *United States v. Gordon,* 19 F.3d 1387, 1388 (11th Cir.1994); *United States v. Seavoy,* 995 F.2d 1414, 1422 (7th Cir.1993); *Johnson,* 931 F.2d at 240. *But see Matthews,* 20 F.3d at 554. Other courts have suggested that physical contact is necessary. *See Fuller,* 99 F.3d at 927; *United States v. Elkins,* 16 F.3d 952, 953–54 (8th Cir.1994); *Roberts,* 898 F.2d at 1469–70. *But see United States v. Gilkey,* 118 F.3d 702, 705 (10th Cir.1997). But even the cases· giving the broadest read to "otherwise us[ing]" would not cover the facts in this scenario. For example, in *United States v. Taylor,* 135 F.3d 478, 482–83 (7th Cir.1998), the court held that it was not necessary for the defendant to couple his use of a weapon with a direct threat in order to arise to "otherwise us[ing]"—but there, the defendant had poked a pellet gun into the victim's back, actually making physical contact. And in *United States v. De La Rosa,* 911 F.2d 985, 993 (5th Cir.1990), the defendant's waving of a gun during an argument was not accompanied by a specific threat to a particular individual—but she did warn the group at large that anyone going to the police would have to deal with her, and this general threat was considered dispositive by the court.

In sum, we hold that the defendant, on the facts of this case, did not "otherwise use[ ]" the weapon within the meaning of U.S.S.G. § 2B3.1(b); he only "brandished, displayed, or possessed" it.

That this result is correct seems especially clear to us given that this case involves a dangerous weapon other than a firearm. For a firearm, the guidelines provide for descending increases depending on whether it was discharged, otherwise used, or brandished. With firearms, then, the guidelines distinguish between (1) using a firearm in the way most likely to result in death; (2) some other use, such as using the firearm to strike a victim, *see United States v. James,* 998 F.2d 74, 82–83 (2d Cir.1993); and (3) displaying or brandishing the firearm. For weapons other than a firearm, however, the guide-

lines provide only two choices: brandishing and other use. Other use in the non-firearm context, therefore, necessarily includes the most extreme thing one can do with a weapon, that is, using it to actually injure, or attempt to injure, a victim. There is no third alternative that covers something between that conduct and the conduct of brandishing or display. Thus, if Kushmaul had used his bat to strike the bank employee, he would properly receive a four-level increase. It seems readily apparent that striking a victim with a baseball bat is far different, and far more culpable, than is holding it in one hand while pushing the victim with the other. This is not to say, of course, that a defendant need injure his victim before he can be said to have otherwise used some weapon other than a firearm; another guideline section addresses bodily injury. *See* U.S.S.G. § 2B3.1(b)(3). But by giving Kushmaul the greatest possible increase one could have for using a baseball bat, in a situation where he did nothing more with it than visibly possess it, the district court effectively obliterated the distinction between important gradations in conduct that are especially necessary to maintain when a weapon other than a firearm is involved.

## IV.

The district court erred in increasing Kushmaul's offense level by four for "otherwise us[ing]" a dangerous weapon; because he only "brandished, displayed, or possessed" the weapon, he should only have received a three-level increase. His sentence is therefore **VACATED** and the matter is **REMANDED** to the district court for resentencing in a manner consistent with this opinion.