

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-27-2004

# USA v. Wilson

Precedential or Non-Precedential: Precedential

Docket No. 03-2496

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Wilson" (2004). *2004 Decisions*. Paper 638.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/638

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-2496
_____

UNITED STATES OF AMERICA

v.

WALTER W. WILSON, JR.,

Appellant
_____

On Appeal from the
United States District Court
for the District of New Jersey
(D.C. Criminal No. 03-cr-00068)
District Judge:
Honorable Jerome B. Simandle
_____

Argued February 25, 2004

Before: RENDELL, BARRY
and FISHER, Circuit Judges.

(Filed: May 27, 2004)

Richard Coughlin
Lori M. Koch (Argued)
Office of Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102
    *Attorneys for Appellant*

George S. Leone
Sabrina G. Comizzoli (Argued)
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
    *Attorneys for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, Circuit Judge.

Defendant Walter W. Wilson, Jr. appeals from his judgment of sentence, arguing that the district court erred in holding that he "otherwise used" a fake bomb during a bank robbery rather than merely "brandishing" it, thus meriting a four-point offense level enhancement under U.S.S.G. § 2B3.1(b)(2). Because Wilson placed the bomb in close proximity to a bank teller and made explicit threats to imminently detonate the bomb if the teller did not comply with his demands, Wilson went beyond mere "brandishing." Accordingly, Wilson "otherwise used" the fake bomb for purposes of U.S.S.G. § 2B3.1(b)(2). We will therefore affirm the judgment of the district court.

**I. Background**

On October 21, 2002, Wilson entered the Pennsville National Bank in Elmer, New Jersey. He was carrying a backpack and a duffle bag, and had what he later claimed was a toy gun stuffed in the waistband of his trousers. The backpack contained a fake bomb made out of a two-liter bottle, PVC pipe, duct tape, and a toy cellular phone as a fake triggering device. Wilson approached a teller, saying "This is not a joke, give me

your money." He moved his jacket aside to display the handle of the toy gun. Wilson further stated, "I also have a bomb that can be detonated by a cell phone, you have 40 seconds." He put the backpack on the counter, approximately 18 inches in front of the teller. Although the teller could not recall whether the backpack was open or shut, she believed that the backpack contained a real bomb.

Wilson handed the teller a note that read (emphasis and misspellings in original):

> No Alarms!
>
> You scream I shoot
>
> I have a Gun and a bomb is hookup to
>
> a phone you have 40 sec To Fill This bag up
>
> with untraceable money 100$. 50$. 20$
>
> NO REd DYES! IF anybody TRYS TO STOP ME
>
> OR Follow ME I Push Redail And Bank Blows UP!
>
> NObody leves the Bank For 20 min
>
> I have pepole wAtching they will Be shot!
>
> I have Nothing To Loose!

The teller put approximately $2,250 in the duffle bag and Wilson left to join his wife and children, who were waiting in a car parked down the street.

Investigators identified Wilson's fingerprints on the demand note and he was later arrested. On January 29, 2003, Wilson pled guilty to bank robbery, 18 U.S.C. § 2113. The parties stated in a plea agreement that they would stipulate at sentencing that Wilson's offense involved a "dangerous weapon" or "dangerous weapons," triggering the specific offense characteristic enhancement under U.S.S.G. § 2B3.1(b)(2). The parties reserved the right to argue whether the enhancement would be three levels for "brandishing" or four levels for "otherwise using." Although the probation officer recommended only a three-level enhancement for "brandishing," the government requested a four-level enhancement for "otherwise using."

At the sentencing hearing on May 16, 2003, the district court concluded that Wilson had not merely "brandished" the fake bomb: "A brandishing would be carrying the bomb in a gym bag in sight of the teller and saying: You know what that is?" Rather, there were "multiple threats contained in the note that this bomb would be used imminently and that it would be used against this teller." By "placing the bomb device on the counter, explaining its mechanism, which is that it would be detonated by phone, the common sense that the phone detonation would occur almost instantaneously, and the fact that the bomb was in direct proximity of the teller and therefore was directed at her if she failed to comply, satisfies the test." In addition, the court held that the presence

2

of the gun in Wilson's pants made the bomb threat more credible.

Thus, stated the court, "[i]t's the equivalent of pointing a bomb at the teller" or "the equivalent of taking the toy gun out and pointing it at the teller saying 'I'll pull this trigger if you don't comply.'" The defendant was essentially saying "'I'll detonate this bomb through the use of this cell phone if you don't comply.'" Although the teller could not recall whether the backpack was open or shut, the court concluded that a picture of the crime scene showing an open backpack proved that it was "possible to see inside the bag" and that the open bag was "what the teller saw."[1] The court found "[t]here

_____

[1]The teller never actually testified. Rather, the U.S. Attorney described the testimony that the teller would have provided had she testified. Although the teller could not recall whether the backpack was open or shut, the government entered into evidence photographs that it said had been taken before the bomb was disturbed. After filing its brief in this appeal, the government discovered that the crime scene had in fact been disturbed. The backpack had been cut open by a detective from the New Jersey State Police Arson/Bomb Unit to reveal its contents before at least some of the pictures were taken. Thus, the photograph relied upon by the district court did not show an undisturbed crime scene, but instead showed the backpack with a cut made after the crime was completed. Moreover,

is no doubt that the teller knew she would be blown up by this device within seconds, and that what she saw made the threats concrete." The court thus concluded that Wilson had "otherwise used" the bomb, and applied a four-level enhancement. Wilson was sentenced to fifty-one months of imprisonment, three years of supervised release, restitution of $2,254, and a special

_____

conceded the government, the photograph at question showed the contents of the bag not from the teller's perspective, but from the perspective of Wilson. Thus, it cannot be said that this particular photograph proves whether the teller saw the contents of the backpack.

Recognizing this, in a post-brief submission, the government included other photographs that had been put in evidence before the district judge. Some of these photographs show the backpack open from the teller's apparent point of view, with this opening due to an open zipper rather than to the cut made by the detective. The government argues that these other photographs support the district court's conclusion that the teller saw the contents of the backpack. For his part, Wilson objects to the district court's use of the photographs to determine what the teller saw because the teller could not remember whether the backpack was open or shut.

We need not resolve this dispute. As discussed *infra*, we base our conclusion on other undisputed evidence of record, and need not consider whether the teller saw the backpack's contents.

assessment of $100. This timely appeal followed.

## II. Discussion

The issue before the Court is narrow – whether Wilson "brandished" or "otherwise used" the fake bomb in connection with the bank robbery. "Brandishing" merits a three-level enhancement, whereas "otherwise using" merits four. U.S.S.G. § 2B3.1(b)(2). Wilson argues that in order to conclude that he "otherwise used" a fake bomb, the district court was required to find that he "pointed the bomb at the victim while issuing a specific threat or order." The government counters that Wilson made specific verbal and written threats to the teller, which along with the positioning of his backpack, constituted "otherwise use" of the fake bomb.

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction of this timely appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Our review of the district court's interpretation of the Sentencing Guidelines is plenary. United States v. Thomas, 327 F.3d 253, 255 (3d Cir.) (citing United States v. Day, 272 F.3d 216, 217 (3d Cir. 2001)), cert. denied, 124 S. Ct. 451 (2003). Determinations of fact are reviewed for clear error. Id. (citing United States v. Carr, 25 F.3d 1194 (3d Cir. 1994)). In addition, we "'give due deference to the district court's application of the guidelines to the facts.'" Id. (quoting 18 U.S.C. § 3742(e)).

We begin by examining the relevant guideline, U.S.S.G. § 2B3.1, which provides the base offense level for robbery. Of particular relevance is the specific offense characteristic for dangerous weapons:

> (A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increase by **4** levels; (E) if a dangerous weapon was brandished or possessed, increase by **3** levels; or (F) if a threat of death was made, increase by **2** levels.

Id. § 2B3.1(b)(2) (emphasis in original).[2]

It is undisputed that Wilson's fake bomb was a "dangerous weapon" for sentencing purposes.[3] Thus, we must

---

[2]Wilson was sentenced on May 16, 2003, so we turn to the 2002 guidelines, as amended as of that date. See U.S.S.G. § 1B1.11(a) (unless the ex post facto clause would be violated, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced").

[3]Wilson concedes that the fake bomb and fake gun were "dangerous weapons" for guidelines purposes. Such concessions were proper – an object that appears to be a dangerous weapon shall be considered to be a dangerous weapon for

4

determine whether the dangerous weapon was "brandished" or "otherwise used." The application notes to the Sentencing Guidelines provide definitions of "brandished" and "otherwise used:"

> "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.
>
> . . . .
>
> "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. § 1B1.1 applic. nn. 1(c), (f) (original italics removed). Thus, "otherwise used" means "more than brandishing, displaying, or possessing . . . a dangerous weapon," but does not rise to the level of "discharge of a firearm." Id. § 1B1.1 applic. n. 1(f) (original italics removed). Although the definition of "otherwise used" is not particularly helpful, we understand it to require us to examine the nexus between the dangerous weapon and the relevant conduct, and determine whether the conduct amounts to more than mere "brandishing." Conduct that is "more" than mere "brandishing" need not rise to actual use or attempted use of the weapon to inflict harm.[4]

purposes of U.S.S.G. § 2B3.1(b)(2). United States v. Orr, 312 F.3d 141, 143-44 (3d Cir. 2002) (discussing U.S.S.G. §§ 1B1.1 applic. n. 1(d), 2B3.1 applic. n. 2 (2001)). The guidelines define a "dangerous weapon" to include, among other things:

> an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1 applic. n. 1(d) (original italics removed); see also id. § 2B3.1 applic. n. 2. Here, the backpack containing the fake bomb was used in a manner to create the impression that it was a real bomb.

[4]For firearms, the guideline recognizes further gradations of conduct than it does for the broader category of dangerous weapons. Discharge of a firearm merits a larger enhancement than "otherwise using." Compare U.S.S.G. § 2B3.1(b)(2)(A) (7 levels if firearm is

5

In the first of two identically named but unrelated Johnson cases, we construed the meaning of "otherwise used" in the context of U.S.S.G. § 2A2.2(b), the guideline for aggravated assault. United States v. Johnson, 931 F.2d 238 (3d Cir. 1991) ("Johnson I"). The defendant had pointed a gun at the victim's head from a distance of one or two feet, ordered her not to start her car or he would "blow [her] head off," and demanded her money. Id. at 240 (alteration in original). Johnson argued that his mere threat meant that he had merely brandished the gun. We disagreed. Whereas "brandish" in the context of the guidelines "denot[ed] a generalized rather than a specific threat," we concluded that where a defendant "actually leveled the gun at the head of the victim at close range and verbalized a threat to discharge the weapon, the conduct is properly classified as 'otherwise using' a firearm." Id.

In the second Johnson case, the defendant and his cohorts robbed several jewelry stores. United States v. Johnson, 199 F.3d 123 (3d Cir. 1999) ("Johnson

_____

discharged), with id. § 2B3.1(b)(2)(B) (6 levels if firearm is "otherwise used"). For dangerous weapons, any conduct beyond mere "brandishing" constitutes "otherwise using." See id. § 2B3.1(b)(2)(D) (4 levels if dangerous weapon is "otherwise used"). Thus, it does not matter if a defendant uses, attempts to use, or engages in some other conduct relating to a dangerous weapon, so long as it amounts to more than mere "brandishing."

II"). In one of the robberies, one of several defendants wielding baseball bats threatened to hit an employee with the bat unless she put a phone down, lest he break her neck or "knock her damn head off." Id. at 124-25, 127. Johnson and others used sledgehammers to break open jewelry cases. We concluded that Johnson would be imputed with the others' conduct and that a four-level enhancement was warranted for "otherwise using." Id. at 127-28. "Courts of Appeals have generally distinguished between the general pointing or waving about of a weapon, which amounts to 'brandishing,' and the pointing of a weapon at a specific victim or group of victims to force them to comply with the robber's demands." Id. at 126. According to those courts, "'brandishing' constitutes an implicit threat that force might be used, while a weapon is 'otherwise used' when the threat becomes more explicit." Id. (citing cases).

Thus, "[p]ointing a weapon at a specific person or group of people, in a manner that is explicitly threatening, is sufficient to make out 'otherwise use' of that weapon." Id. at 127. This was "true when *any* dangerous weapon is employed: It need not be a firearm." Id. (emphasis in original). Moreover, we noted that verbal threats were not required – non-verbal conduct could also suffice. Id. (citing United States v. Nguyen, 190 F.3d 656 (5th Cir. 1999)).[5] Thus, Johnson had

_____

[5]In Johnson II, we cited with approval to the First Circuit's opinion in

6

"otherwise used" dangerous weapons in two ways: through a co-defendant's use of the baseball bat, and through his own

---

United States v. LaFortune, 192 F.3d 157 (1st Cir. 1999). See Johnson II, 199 F.3d at 127. In LaFortune, the defendant had pointed a cocked gun at the head of one teller, holding the gun in his hand while shoving a customer to the floor and ordering her to get down and not to talk, and aimed the weapon directly at another bank employee while giving orders. 192 F.3d at 161. The Court concluded that LaFortune had "otherwise used" the weapon:

> a person may "brandish" a weapon to "advise" those concerned that he possesses the **general ability** to do violence, and that violence is imminently and immediately available. A **general**, or even pompous, showing of weapons, involving what one would consider an arrogant demonstration of their presence, constitutes the **generalized warning** that these weapons may be, **in the future**, used and not merely brandished. Altering this **general display** of weaponry by **specifically leveling** a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of "brandishing" and the commencement of "otherwise used."

Id. at 161-62 (emphasis in original).

conduct in using the sledgehammer to coerce and threaten others by smashing open jewelry cases while a co-defendant threatened an employee with the baseball bat. Id. at 127-28.

We confronted whether conduct without an explicit verbal threat could be "otherwise using" in United States v. Orr, 312 F.3d 141 (3d Cir. 2002), where the defendant robbed a credit union carrying what appeared to be a handgun but was in fact a pellet gun. Orr held the gun to the assistant manager's head and directed her to empty a cash box into a garbage bag. We noted that in Johnson I and Johnson II, the defendants had "otherwise used" dangerous weapons by (1) pointing or raising a weapon at a victim; (2) threatening to harm or kill; and (3) making demands for money or other actions. Id. at 144-45 (citing Johnson II, 199 F.3d 123; Johnson I, 931 F.2d at 240). In Orr, a demand for money was made, but the threat to shoot was made only through the defendant's conduct. We concluded that "[n]either the guidelines nor the caselaw requires infliction of the violent physical contact Orr suggests or a verbalized threat to harm the victim in order to constitute 'otherwise used.'" Id. at 145.

There is little case law on when a bomb or incendiary device, fake or real, has been "otherwise used." However, this issue arose in the Eleventh Circuit in United States v. Miller, 206 F.3d 1051 (11th Cir. 2000), where the defendant approached a bank teller, displayed what looked like a bomb, lit the fuse, and asked

7

her if she knew what "it" was. He demanded money without dye packs. The Court concluded that Miller did not just display or brandish the fake bomb – he actually lit the fuse while explicitly threatening the teller. Id. at 1054. The Court held that "lighting the fuse is like the cocking of a handgun," making the dangerous weapon "otherwise used." Id.; cf. United States v. Waskom, 179 F.3d 303, 314-15 (5th Cir. 1999) (construction and detonation of test bombs in connection with conspiracy to commit robbery, with plans to detonate additional bombs as diversion for upcoming robbery, showed bombs were "otherwise used").[6]

Turning to the facts at hand, we conclude that Wilson "otherwise used" the fake bomb. He made explicit verbal and written threats that he would detonate the bomb if the teller did not comply with his demands. He said "This is not a joke, give me your money," and demanded, both verbally and in writing, that the teller give him money. He also said that he had "a bomb that can be detonated by a cell phone, you have 40 seconds." His demand note said his bomb was hooked up to a

phone, gave the teller 40 seconds to hand over untraceable money without red dye, and indicated that if anybody tried to stop him, he would push redial and blow up the bank, which would necessarily include blowing up the teller. Wilson's actions were also explicitly threatening. He placed the bomb in close proximity to the teller, 18 inches away.[7] Indeed, the teller believed that the backpack contained a real bomb. Wilson also displayed what appeared to be a gun stuffed in the waistband of his trousers.[8] Accordingly, Wilson "otherwise used" the fake bomb.

---

[6]Other cases have involved fake bombs employed in bank robberies in connection with explicit threats. See, e.g., United States v. Rodriguez, 301 F.3d 666, 667 (6th Cir. 2002); United States v. Hart, 226 F.3d 602, 603-04 (7th Cir. 2000). Neither of these cases addressed whether the fake bombs were "otherwise used," instead discussing whether they were dangerous weapons in the first place.

---

[7]We do not suggest that a bomb must be close to a victim for it to be "otherwise used." Nor do we opine on how or whether a bomb's distance might affect the calculus. Limiting ourselves to the facts of this case – the proximity of the fake bomb to the teller, Wilson's explicit verbal and written statements, and his other actions – compels the conclusion that the fake bomb was "otherwise used." Cf. United States v. Yelverton, 197 F.3d 531, 533-34 (D.C. Cir. 1999) (construing U.S.S.G. § 2A4.1(b)(3) (1995) and concluding that kidnapper "otherwise used" gun when, to induce payment of ransom, he showed mother a picture of her child with a gun pointed to his head).

[8]Although the conduct with the gun was not directly tied to the fake bomb, we agree with the district court that the gun made Wilson's threats regarding the fake bomb more credible.

Wilson attempts to distinguish Miller on its facts because Miller had gone further, lighting the fuse of his fake bomb. In contrast, says Wilson, he never took the bomb out of the backpack, waved or pointed the backpack at the teller, moved the backpack, or reached for the detonator. Wilson's argument misses the mark. Such additional steps are no doubt sufficient to show "otherwise use." They are not, however, necessary. Although Miller noted that "lighting the fuse is like the cocking of a handgun," the gun need not be "cocked" – the mere pointing of a weapon, in connection with explicit threats, is sufficient.

Here, the fake bomb was essentially "pointed" at the victim by its placement within 18 inches of her body. Wilson made explicit verbal and written threats in connection with the fake bomb. The conduct was undertaken to heighten the teller's fear in order to facilitate the robbery. Yelverton, 197 F.3d at 534 ("the key consideration is whether a gun (or other weapon) was pointed at a specific person in an effort to create fear so as to facilitate compliance with a demand, and ultimately to facilitate the commission of the crime"). Wilson's conduct is analogous to pointing a gun at the teller's head and threatening to shoot lest the teller fail to comply. Accordingly, Wilson's use of the fake bomb was like the pointing of a handgun, making it "otherwise used."[9]

[9]Wilson would have us conclude that the evidence of record – which clearly evidences far more than mere

"brandishing" – cannot constitute "otherwise using." Such a conclusion runs counter to the bulk of authority and our prior cases. As stated by the D.C. Circuit:

> Virtually all of the circuits to address the question have held that where a dangerous weapon is pointed at a person and some further verbal threat or order accompanies the pointing of the weapon to facilitate commission of the underlying crime, an enhancement for the use of the weapon is justified.

Yelverton, 197 F.3d at 534 (citing cases).

Cases to the contrary ignore the fact that any conduct beyond mere "brandishing" is "otherwise using." In United States v. Matthews, 20 F.3d 538 (2d Cir. 1994), the defendants ordered bank robbery victims to lie on the floor, pointed their weapons at them, and threatened to kill anyone who disobeyed. The Second Circuit concluded that the addition of an explicit verbal threat did not constitute additional use of the weapon, and therefore was mere "brandishing." Id. at 554; see also United States v. Moerman, 233 F.3d 379, 381 (6th Cir. 2000) (pointing of gun combined with verbal demand not "otherwise using"); United States v. Gonzales, 40 F.3d 735, 740 (5th Cir. 1994) (same).

We rejected Matthews in Johnson II, where we cited to Matthews with a "But see." See Johnson II, 199 F.3d at 126-27 (following other circuits and citing Matthews as contrary authority). Indeed,

Defendant also cites to United States v. Kushmaul, 147 F.3d 498 (6th Cir. 1998), where the defendant used one hand to force a victim to the floor during a bank robbery. In Kushmaul's other hand was a baseball bat, which Kushmaul never raised. He told the victim, among other things, "Be quiet and I won't hurt you." Id. at 499. The Court concluded that "the assault was committed entirely independently of the bat." Id. at 501. Although the defendant verbally threatened the woman, he did so "without reference" to the bat. Id. Accordingly, the assault and threat were not relevant to an assessment of how the defendant used the weapon. Id.

Not only is Kushmaul distinguishable on its facts, but its result supports our conclusion. We read Kushmaul to stand for the proposition that

there must be a nexus between the dangerous weapon and the conduct alleged to constitute "otherwise use" of that weapon. In Kushmaul, that nexus was lacking. The weapon was not – through words or actions – specifically used in connection with a demand or threat. In contrast, Wilson, through his words and actions, made specific use of and reference to the fake bomb in connection with his demand and threat.[10]

Finally, Wilson argues that the district court clearly erred in concluding that the teller saw the contents of the backpack containing the fake bomb. This argument is in theory enhanced by the government's concession on appeal that the photograph of the open backpack cited by the district court turned out to show a backpack that had been cut open after the robbery. But whether or not the teller saw the backpack's contents is irrelevant.

---

the holding of Matthews is irreconcilable with Johnson II, where we held that "[p]ointing a weapon at a specific person or group of people, in a manner that is explicitly threatening, is sufficient to make out 'otherwise use' of that weapon." Id. at 127. Other Courts of Appeals have held similarly. See United States v. Cover, 199 F.3d 1270, 1279 (11th Cir. 2000) (treating Matthews as contrary authority); LaFortune, 192 F.3d at 161 (rejecting Matthews); Yelverton, 197 F.3d at 534 n.2 (treating Matthews and Gonzales as contrary authority); United States v. Wooden, 169 F.3d 674, 677 n.5 (11th Cir. 1999) (rejecting Gonzales and distinguishing Matthews).

[10]Wilson also quotes Kushmaul for the proposition that "'[o]ther use in the non-firearm context . . . necessarily includes the most extreme thing one can do with a weapon, that is, using it to actually injure, or attempt to injure, a victim.'" Wilson Br. at 13 (quoting Kushmaul, 147 F.3d at 502). This proposition does not help Wilson. Although "the most extreme thing" can constitute "otherwise using," lesser conduct may satisfy "otherwise using" as well. See n. 4, supra. In other words, Wilson did not have to try to blow up the teller in order to "otherwise use" his fake bomb.

Wilson concedes that the fake bomb was a dangerous weapon and it is undisputed that the teller believed the bomb to be real. Indeed, the fake bomb was used in a manner to suggest that it was real, making it a dangerous weapon for guidelines purposes. See U.S.S.G. § 1B1.1 applic. n. 1(d) (object used "in a manner that created the impression that the object was such an instrument" is dangerous weapon). One need not see a fake bomb in order for it to constitute a dangerous weapon. See Rodriguez, 301 F.3d at 669 (styrofoam sandwich box put forth as bomb properly found to be "dangerous weapon"); Hart, 226 F.3d at 609 (lunch box and shoe box put forth as bomb properly found to be "dangerous weapons"). As undisputed evidence of record compels the conclusion that Wilson "otherwise used" the fake bomb, it does not matter whether or not the teller saw the contents of the backpack.[11]

---

[11]The government notes that other photographs entered into evidence before the district court show an unzipped backpack that could have been viewed from the teller's perspective, thus arguing that the district court did not clearly err in concluding that the teller saw the backpack's contents. We need not decide whether the district court clearly erred because the undisputed evidence of record compels the conclusion that the fake bomb was "otherwise used." Even if the district court erred, it is well-settled that we may affirm its judgment on different grounds. See United States v. Miller, 224 F.3d 247, 248 n.1 (3d Cir. 2000) ("We may *affirm* a

## III.

By placing a fake bomb close to a bank teller who believed it to be real, and by making explicit verbal and written threats to imminently detonate the bomb if the teller did not comply with his demands, Wilson went beyond mere "brandishing." His conduct is analogous to pointing a gun at a teller's head, making demands, and threatening to shoot unless the teller complies. We therefore conclude that Wilson "otherwise used" the fake bomb for sentencing purposes and that the four-level enhancement was correct.

Accordingly, the judgment of the district court will be AFFIRMED.

---

District Court's judgment on grounds other than those considered by the District Court itself." (emphasis in original)); see also United States v. Garnett, 243 F.3d 824, 830 (4th Cir. 2001) ("we can affirm [a] sentence on the basis of any conduct [in the record] that independently and properly should result in an increase in the offense level" (second alteration in original, quotation marks removed)).

11