

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2007

# USA v. Suggs

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2640

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Suggs" (2007). *2007 Decisions.* Paper 1208.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2640

UNITED STATES OF AMERICA

v.

JAMES SUGGS,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 03-cr-00109)
District Judge: Honorable Michael M. Baylson

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2007

Before: SLOVITER and AMBRO, Circuit Judges
THOMPSON,* District Judge

(Opinion filed April 26, 2007)

OPINION

*Honorable Anne E. Thompson, Senior United States District Judge for the District of
New Jersey, sitting by designation.

AMBRO, Circuit Judge

James Suggs appeals his conviction and sentence for two counts of unarmed bank robbery. After the jury returned a guilty verdict in the District Court for the Eastern District of Pennsylvania, Suggs moved for a judgment of acquittal or, in the alternative, a new trial. The District Court denied both motions and sentenced Suggs to the middle of the then-mandatory federal Sentencing Guidelines range, based in part on a two-level enhancement after a judicial finding that Suggs committed one of the robberies with a threat of death. Suggs argues that the Court's rulings on the motions were erroneous and that its sentence violated the Sixth Amendment of our Constitution. Upon review and for the reasons stated below, we affirm the conviction but vacate the sentence and remand for resentencing.

## I.    Procedural Background

Suggs was indicted for armed bank robbery (in February 2002) in violation of 18 U.S.C. § 2113(d) (Count 1), use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Count 2), and two counts of unarmed bank robbery (in March 2002 and January 2003) in violation of 18 U.S.C. § 2113(a) (Counts 3 and 4). At the conclusion of trial, the jury returned verdicts of not guilty for Counts 1 and 2, and guilty for Counts 3 and 4. The Court denied Suggs's Post-Trial Motions for Acquittal or, alternatively, New Trial pursuant to Federal Rules of Criminal Procedure 29(c) and 33(a), and issued a Memorandum to explain its decision. *See United States v. Suggs*, Crim. No. A.2003-109,

2

2004 WL 1240621 (E.D. Pa. May 11, 2004).

Adopting the Presentence Report, the Court determined that, for Count 3, the base

offense level was 20 for violation of 18 U.S.C. § 2113(a) under U.S.S.G. § 2B3.1,[1] added

a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(1) for taking the property of a

financial institution, and added another two-level enhancement pursuant to

§ 2B3.1(b)(2)(F) for making a "threat of death" during the robbery. This resulted in a

total adjusted offense level of 24. The Court's calculation for Count 4 was the same as

that for Count 3 minus the two-level enhancement for a "threat of death," resulting in a

total adjusted offense level of 22.[2] Under U.S.S.G. § 3D1.4,[3] the Court took the higher

---

[1] Following the District Court, all references to the Guidelines are to the 2003 Manual.

[2] Note that, ordinarily, "[w]hen a defendant has been convicted of more than one count, the court [is required to]: (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ('Groups') by applying the rules specified in §3D1.2." U.S.S.G. § 3D1.1(a). However, offenses covered by U.S.S.G. § 2B3.1—including bank robbery under 18 U.S.C. § 2113(a)—are excluded from grouping, and each count is an independent Group. This exclusion applies here. Suggs's offense levels, therefore, were calculated separately for each Count, and each Count was considered a separate Group.

[3] This provision states, in relevant part, that for multiple counts,

> [t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by [a certain] amount [as indicated in a table].
> . . .
> In determining the number of Units for purposes of this section:
>
> > (a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from **1** to **4** levels less serious.
> > . . .

3

offense level and enhanced it by two to yield a combined adjusted offense level of 26.

Combining the offense level with a criminal history category of IV for past convictions

and parole violations, the Court determined that the Guidelines range sentence was 92 to

115 months' imprisonment. It sentenced Suggs to 110 months' imprisonment, three

years' supervised release, and restitution payments in the amount of $4,885.

Suggs appeals the District Court's denial of his motion for acquittal or a new trial

on the grounds that the evidence was insufficient to support the convictions, that the

District Court erred with respect to the jury instructions, and that it committed a number

of fatal errors in its evidentiary rulings. Because each ground is fact-intensive, we review

the facts in our analysis below in more detail than normal for a not-precedential opinion.

Suggs also appeals his sentence on the grounds that (1) the two–level "threat of death"

enhancement violates the Sixth Amendment because it was a judicial finding by a

preponderance of the evidence rather than a jury determination beyond a reasonable

doubt, and (2) he is entitled to a remand in the wake of *United States v. Booker*, 543 U.S.

220, 243 (2005) (rendering the Guidelines advisory), because the Court imposed his

sentence in a mandatory sentencing regime.[4]

## II.     Challenges to the conviction

_____

U.S.S.G. § 3D1.4 (emphasis in original).

[4] The District Court had subject matter jurisdiction over this case under 18 U.S.C.
§ 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).
*See United States v. Cooper*, 437 F.3d 324, 327–28 & n.4 (3d Cir. 2006).

### A. Insufficiency of the evidence challenges under Rule 29

Suggs first asks us to reverse the District Court's refusal to enter a judgment of acquittal pursuant to Rule 29 for both Counts 3 and 4.[5]   For Count 3, he challenges the sufficiency of the evidence to establish that he possessed stolen goods, much less that he robbed the bank.  For Count 4, he "does not challenge his possession of robbery proceeds," Appellant's Br. at 31, but contends that mere possession cannot create the inference that he committed the robbery.

We review a denial of a judgment of acquittal *de novo*, applying the same standard as the District Court.  *United States v. Flores*, 454 F.3d 149, 155 (3d Cir. 2006).  Our review is "highly deferential."  *United States v. Hodge*, 321 F.3d 429, 439 (3d Cir. 2003) (citations omitted).  We must sustain the verdict if, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Flores*, 454 F.3d at 155; *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (*en banc*).

### 1. Count 4—January 3, 2003 Bank Robbery

We begin with the District Court's uncontested recitation of the facts relating to the second robbery first, as it is central to reviewing Suggs's challenge to his conviction

---

[5] The rule provides, in relevant part, that "[a] defendant may move for a judgment of acquittal . . . .  If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c).

for the earlier robbery in Count 3.

> Defendant was taken into custody at the Marshall Street
> Check Cashing Agency at 421 West Marshall Street,
> Norristown, with $ 450 in red, dye-stained money on the
> Saturday morning (January 4, 2003) following the bank
> robbery charged in Count IV.  Defendant gave the person
> operating the check cashing agency, Kenneth Pfalzer, and a
> Norristown police officer who responded to Pfalzer's call to
> come to the agency, two different explanations for his
> possession of the dye-stained money.  Suggs agreed to
> accompany the police officer to the Norristown Police Station
> where after a short delay, he was questioned by an FBI agent
> and other detectives.  Some of Defendant's statements at the
> police station were admitted into evidence[6] and the jury was
> entitled to find that they were false exculpatory statements
> which were incriminating.
>
> Defendant consented to a search of his car where police found
> a white T-shirt stained with red dye, money orders, and black
> gloves.  An FBI examination of the T-shirt showed that the
> T-shirt contained both traces of tear gas and the dye
> commonly found in bank dye packs given to bank robbers by
> tellers.[7]  The bank tellers could not identify Suggs, but their
> description of the robber was consistent with his general
> build.  In addition, dye-stained money was found at a nearby
> coin exchange machine at the B&B Car Wash, which
> investigators were able to identify through "bait money" lists
> as proceeds taken during the January 3, 2003 robbery.  There
> was also evidence that around this time, soon after the
> January 3, 2003 robbery, dye-stained money was also found
> inside the coin exchange machines at the Elmwood Park Car
> Wash.  Suggs had in his possession a receipt, dated the day

---

[6] [D. Ct. Op. n.1] The circumstances of this interrogation were the subject of a pretrial motion to suppress, which the Court granted in part and denied in part. *United States v. Suggs*, No. 2003-109, 2003 U.S. Dist. LEXIS 20181 (E.D. Pa. Oct. 30, 2003).

[7] [D. Ct. Op. n.2] Tracey Turner, a teller involved in the January 3, 2003 bank robbery, testified that she gave the bank robber a dye pack.

6

after the robbery, indicating that he had attempted to exchange $438.75 in quarters for U.S. currency at the Giant Supermarket in Norristown.

The government introduced other evidence, and although entirely circumstantial, built a large quantum of evidence in the aggregate, and the Court finds, as it stated at the time of the motion for acquittal at the close of the government's case, that the evidence was sufficient for the jury to convict the Defendant as to Count IV.

*Suggs*, 2004 WL 1240621, at *1–2 (internal citations omitted). The Court's analysis indicates that the jury relied on more than mere possession to convict him for robbery. Suggs's challenge to the contrary thus fails.

### 2. Count 3—March 29, 2002 Bank Robbery

The District Court centered on four principal facts in evaluating the sufficiency of the evidence to support the jury's verdict for Count 3. First, the bank teller involved in the incident, Diane Haney, testified that she gave the robber an exploding dye-pack, which another teller watched explode as the robber left the bank.

Second, Pfalzer, operator of the nearby check-cashing agency, positively identified Suggs as having been in possession of dye-stained money a day or two after the robbery[8]:

> Q: At some time around noon on March 31st, 2002, did anything unusual take place in the business, the check

---

[8] There is some discrepancy as to timing. But, as the Court concluded, the precise dating was immaterial to the central claim that when "Mr. Pfalzer encountered the Defendant, it was less than 48 hours after the March 29, 2002 bank robbery." *Suggs*, 2004 WL 1240621, at *3 & n.3.

cashing agency, at that time?

. . .

A:     What took place is, that day I was very busy. There was a gentleman that came up that had—that I saw that had dye-stained money.  And the—the window at which I was working at there was cameras, I had three cameras located—the cameras are direct—placed directly in front of the window, so it's just shot right down directly on the person who's standing in front of me.

       Mr. Suggs, the gentleman over to the left right there, approached me, asked for two money orders in the sum of $300 each.  I saw the red dye money.  I said, "No."  He turned away, he acted very nervous, and walked away.

Q:      All right. Let me ask you about this: You said the person came up to your window?

A:     Yes. . . .  Stood to the left of my window.

Q:     All right.  And generally how would you describe this person?

A:     He was very nervous. . . .  He was a black fellow.

Q:     And how far was he from you on that particular day when you had—when you dealt with him?

A:     About three feet.  There's a space between us. Between the counter and the glass, on the other—other side of the glass.

Q:     All right.  Now, do you see that person that came up to [your window] on that day here in this courtroom?

A:     Yes, sir.

8

Q:      All right.  Can you point him out to the members of the jury.

A:      That man right over there (indicating).

Q:      Let the record reflect the witness has identified James Suggs.

THE COURT: Okay.

App. at 608–10.

Third, the evidence established that nine months later, after the second bank robbery (in 2003) for which Suggs was convicted, he went to the same check cashing agency to attempt the same transaction with Pfalzer.  Finally, employees of a local car wash testified that they found dye-stained money in the coin change machines on March 31, 2002 or April 1, 2002 (two and three days after the robbery, respectively), and found dye-stained money at the same machines after the 2003 robbery.

The Court determined that "the jury was entitled to conclude that the Defendant, perhaps *out of habit* as well as stupidity, took dye-stained money on a morning shortly following both robberies to the same check cashing agency . . . [and car wash]." *Suggs*, 2004 WL 1240621, at *4 (emphasis added).  It also noted that "the fact that these two robberies are nine months apart [does not] destroy[] any argument about probative value [because] . . . the facts in this case are unique facts that the jury could take into consideration, and which constitute sufficient circumstantial evidence to convict." *Id.* Finally, the Court concluded that "the jury was entitled to consider the evidence which

9

had been introduced as part of the government's evidence in proving Count [4] [the subsequent 2003 robbery] as tending to prove that the Defendant used the same conduct on the day following [this] robbery, charged in Count [3] . . . . The common sense inferences from these bizarre events allow a jury to infer guilt." *Id.*[9]

Suggs advances six arguments challenging the sufficiency of the evidence relating to the possession of stolen money charge: (1) the evidence only established that he was in possession of dye-stained money, not that the money was stolen or that it came from the bank; (2) there was no proof that the red dye on the $56 recovered from the change machine came from a dye-pack, and thus that the money was stolen at all; (3) Pfalzer's testimony, at most, established that he possessed stolen money, not that he stole the money; (4) the proximity of Suggs's home to the change machine from which $56 in dye-stained money was recovered is not probative or conclusive to establish a connection to him; (5) there was no testing for fingerprints on the $56 to link it to Suggs; (6) the bank tellers' identification testimony was both inconsistent and inconclusive—one having described him as a black male, 5'6", and 20–30 years old, and another having described him as "sounding" white, 5'7", 20 years old, and 150 pounds—whereas, in fact,

___

[9] Suggs seems to have dropped his argument that it was improper to allow the jury to look to events following the 2003 robbery for its verdict concerning events following the 2002 robbery—*i.e.*, that Suggs was apparently found at the same check cashing agency with dye-stained money and that stained money was found in the same change machines both times within days of the robbery. Essentially, this was a challenge to the use of habit evidence: can a jury look to "habit" from future alleged crimes in support of its conviction on an earlier count? The Court implicitly suggested that a jury could do so. Because Suggs did not preserve this issue, it is waived and we do not address it.

10

Suggs is black, says he is 5'9" and 170 pounds, and was approximately 50 years old at the time of the robbery. In sum, he contends, the only facts proven beyond a reasonable doubt were that he entered the check cashing establishment two days after the robbery and that stolen money was found in a car wash machine in his town of residence. He concludes that these facts cannot support a conviction because the Government did not satisfy its burden of proving each element of the crime beyond a reasonable doubt.

The first two arguments are easily disposed. As the District Court pointed out, *Suggs*, 2004 WL 1240621, at *3, dye-stained money is known commonly to be a sign of bank robbery proceeds. *E.g.*, *United States v. Edwards*, 242 F.3d 928, 935 (10th Cir. 2001) ("Dye-packs are not available to the public, and are primarily used to mark money stolen from banks."); *see also United States v. Wilson*, 369 F.3d 329, 335 (3d Cir. 2004) (accused bank robber demanded that tellers refrain from including traceable dye-packs with the money demanded), *vacated on other grounds and for reconsideration in light of Booker*, 543 U.S. 220 (2005); *United States v. Thomas*, 327 F.3d 253, 254 (3d Cir. 2003) (same). Courts recognize that there is a presumption that the jury properly evaluated credibility of witnesses, found facts, and drew rational inferences. *United States v. Wasserson*, 418 F.3d 225, 237 (3d Cir. 2005) (quoting *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992)); *cf. United States v. Navarro*, 145 F.3d 580, 592 (3d Cir. 1998). On that presumption, we conclude that it was not improper for the Court to allow the jury to infer that Suggs's possession of dye-stained money and the existence of such money in

11

the change machine—taken together with the other evidence—implicated Suggs in a robbery.

The next three arguments concern whether the evidence of Suggs's possession of stolen funds sufficed to sustain a conviction for this robbery. Suggs argues that the Government simply relied on the proximity of his home to the change machine without testing the money for fingerprints to link the stolen proceeds to the robbery conclusively. He contends that this is not enough under *United States v. Bamberger*, 456 F.2d 1119 (3d Cir. 1972), which reversed a robbery conviction because the Government failed to prove that the defendant was in actual or constructive possession of the stolen funds. *Id.* at 1134 ("The fatal deficiency in the government's case lay in its failure to prove actual or constructive possession of the bait money by Young.").

Yet *Bamberger* is distinguishable. As the District Court highlighted in rejecting Suggs's challenge, the Government in *Bamberger* never even proved that the defendant possessed stolen funds, but here it did. *Suggs*, 2004 WL 1240621, at *5 ("[D]efendant's possession of stolen bank proceeds has been proven through Mr. Pfalzer's testimony . . . that positively identified Defendant as the possessor of the stained money."). The Court concluded that possession sufficed to prove robbery here because "'beyond a reasonable doubt' is not beyond [the] possibilities" that "the defendant could have received the money from the robber . . . [or] that the defendant could have found the money on the street." *Id.*

12

We hasten to emphasize that proof of possession alone is not enough to sustain a robbery conviction. The *Bamberger* Court recognized this in stating that "[w]ithout proof of possession, there can be no rational basis to the inference of guilt . . . [,] *this being the sole incriminating evidence against Young.*" *Bamberger*, 456 F.3d at 1135 (emphasis added). We also note that the "beyond a reasonable doubt" standard does not allow convictions based on one of several equally plausible possibilities; this standard requires more certainty in the minds of the jurors. *See, e.g.*, 2 McCormick on Evidence § 341 (6th ed. 2006). Here, possession, when considered along with other corroborating evidence to support the inference of guilt for the robbery, was sufficient to support the inference beyond a reasonable doubt. We presume that the jury applied the reasonable doubt standard as instructed in arriving at its verdict, and we do not attempt to interject our view of the evidence for that of the jury. As such, Suggs's third, fourth, and fifth challenges fail as well.[10]

On this basis, we need not address in detail Suggs's sixth contention—that the bank tellers' identification testimony was inconsistent and inconclusive. Alone, any deficiency in their testimony cannot support a judgment of acquittal, as the District Court

---

[10] We do not discount Suggs's suggestion that the Government could have employed additional tests, such as fingerprinting, to elicit more certain proofs against him to prove that the stolen proceeds came from the bank robbery. Indeed, it is advisable that the Government employ such tests, as reasonable doubt allows juries to convict only when they are satisfied with a degree of certainty that a defendant is guilty of all elements of a crime. We only hold that, even without doing so here, the jury found that the evidence sufficed to support an inference of guilt for the robbery through linking the stolen funds to Suggs. For further discussion of the type of evidence required, see *infra*, § II.B.2.c.

concluded. *Suggs*, 2004 WL 1240621, at \*5.

In sum, the Court ruled that the above facts, together with the presumption that a rational jury considers all the evidence before it, was sufficient to support the inference that the dye-stained money constituted stolen proceeds from a bank robbery. We agree.

## B. Evidentiary and procedural challenges under Rule 33

Suggs also challenges the District Court's refusal to grant him a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which permits a district court to overturn a conviction in the interest of justice. However, "[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (citations omitted). They are appropriate "only if [the court] believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* (citations omitted). We review the denial of a Rule 33 motion for abuse of discretion. *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted).

Suggs makes three types of claims here: that the convictions were contrary to the weight of the evidence, that they resulted from improper jury instructions, and that they

14

stemmed from impermissible evidentiary rulings.

### 1. Weight of the evidence

As he acknowledges, Appellant's Br. at 29, Suggs's arguments regarding the denial of his new trial motion based on the weight of the evidence as to Count 3 rehashes those made in support of his insufficiency of the evidence claim. He adds two observations that, in his view, could have supported a verdict of not guilty because they show that he was in need of money after the robbery (he was gainfully employed though he pawned a camera for $105 shortly after the robbery) and provide an alternative explanation for his possession of dye-stained money (he bought $450 in dye-stained money at a discount—for $150—from another individual). We have already explained our view that there is sufficient evidence to support Suggs's conviction. These additional observations do not change that and offer no reason for us to doubt either the District Court's conclusion that no miscarriage of justice took place or its refusal to grant a new trial.

### 2. Jury instructions

Suggs also urges us to reverse the District Court's refusal to grant a new trial on the basis that it committed numerous errors in giving jury instructions on both counts. He contends that the Court's errors were so prejudicial that they represent the type of miscarriage of justice that warrants a new trial.

We exercise plenary review in determining "whether the jury instructions [state]

15

the proper legal standard." *United States v. Khorozian*, 333 F.3d 498, 507–08 (3d Cir. 2003) (citations omitted). "It is well-settled that the trial judge retains discretion to determine the language of the jury charge . . . [s]o long as the court conveys the required meaning," and is under no obligation "to use the language the defendant proffers." *Flores*, 454 F.3d at 161. Thus, we review a court's refusal to give a particular instruction for abuse of discretion, and consider "the totality of the instructions and not a particular sentence or paragraph in isolation." *Khorozian*, 333 F.3d at 507–08. We will only reverse if the proposed instructions were "correct, not substantially covered by the instructions given, and [were] so consequential that the refusal to give the instruction was prejudicial to the defendant." *United States v. Leahy*, 445 F.3d 634, 651 (3d Cir. 2006)

### a. Recent possession of stolen property

Suggs argues that the Court erred in giving instructions for "recent possession of stolen property" on Counts 3 and 4. We reject Suggs's claims that it was improper for the Court to give the instruction at all with respect to Count 3, for reasons laid out above in our discussion regarding the sufficiency of the evidence. We also reject his contention that the jury instructions stated the law incorrectly.

The District Court instructed the jury as follows:

> Possession of recently-stolen property, if not satisfactorily explained, is the circumstance[] from which a jury may infer that the person in possession of it not only knew that the property was stolen, but also participated in the theft in some way.

16

The term "recently" is a relative one. It has no fixed meaning. [Whether] property may have been considered as recently stolen depends on the nature of the property and all of the other evidence received in the case. It is solely for the jury to decide what inferences, if any, are to be drawn from the evidence received in the case.

You're not required to make any connection between the Defendant's possession of dye-stained money and participation in an actual bank robbery.

The mere fact that I am telling you about this connection does not mean I am encouraging you to make it. You have the right to reject this connection if you deem it appropriate to do so. Remember that at all times the Government has the burden of proving beyond a reasonable doubt that Defendant participated in the robbery.

The first two paragraphs and the last sentence of this instruction mirror, almost verbatim, the standard instructions provided in 1A *Fed. Jury Practice & Instructions: Criminal* § 16.10 (O'Malley et al. eds., West 2000), and affirmed in *Barnes v. United States*, 412 U.S. 837, 840–846 (1973). Under *Barnes*, this was a correct statement of the law and, in reminding the jury that any inferences it drew from a finding possession were subject to the reasonable-doubt requirement for proving the robbery, the Court accommodated Suggs's concern that the jury not rely solely on possession as the basis for its robbery verdict. We therefore cannot conclude that the District Court abused its discretion in rejecting Suggs's proffered additions to those instructions.

### b. "Cross-racial identification"

Suggs argues that the jury should have been given special instructions alerting

17

them to the "cross-racial recognition impairment of eyewitnesses" because of the critical role Pfalzer (who is white) played in identifying Suggs (who is black) in connection with the crime. Appellant's Br. at 36–37 (quoting *New Jersey v. Cromedy*, 727 A.2d 457, 458 (N.J. 1999)). However, as Suggs acknowledges, our Court has no such requirement. Therefore, and because the Court gave the identification instructions that we do require, *see* App. at 1014–16, we see no miscarriage of justice and no abuse of discretion in the Court's refusal to grant a new trial on this basis.

### c. "Weaker or less satisfactory evidence"

According to Suggs, the District Court also erred by declining to give an instruction on "weaker or less satisfactory evidence."[11] Essentially he argues that the Government's failure to follow forensic and testimonial leads to more solid evidence created numerous deficiencies in the case against him. According to Suggs, the evidence of a crime is all circumstantial and, given the lack of more direct evidence, "it is reasonably possible that the Court's failure to instruct the jury that it may consider these

---

[11] Suggs proposed the following instruction:

> If *the government* offers weaker or less satisfactory evidence when stronger or more satisfactory evidence could have been produced at trial, you may, but are not required to, consider this fact in your deliberations. Remember that a defendant is not obliged *or required* to produce any evidence or to call any witnesses.

Appellant's Br. at 46 (said to be "adapted" from O'Malley et al., *supra*, § 14.14) (emphasis added by Appellant). As the Government notes, Suggs has added the italicized words to the language provided in the sourcebook, Fed. Jury Practice & Instructions. *See* O'Malley et al., *supra*, § 14.14 (using "a party" instead of "the government" and omits "or required"); *cf. United States v. Canas*, 595 F.2d 73, 80–81 (1st Cir. 1979) (same).

deficiencies in evaluating reasonable doubt substantially influenced their [*sic*] verdict."

Appellant's Br. at 49. This appears to be yet another iteration of the insufficiency of the

evidence argument, and does not satisfy the Rule 33 standard for a new trial, which is

triggered where there is a serious danger that a miscarriage of justice has occurred. The

"weaker or less satisfactory evidence" instruction was not required, and the decision to

give it was within the scope of the Court's discretion. In light of the facts that the jury

found the evidence sufficient to convict Suggs and that the Court gave instructions on the

reasonable-doubt standard as well as on the use of circumstantial evidence, we do not

think that the Judge abused his discretion in denying a new trial on this basis.

### 3. Evidentiary rulings

#### a. Photographs of injuries on Suggs's hands

Suggs next contends that the District Court fatally erred when it admitted three

photographs of a blister on his left palm over his objections, and then allowed the

Government to reference them in its closing arguments, all without laying a proper

foundation for their introduction.[12] Moreover, the Government, he claims, failed to

produce an expert witness to give medical testimony linking the injury to an exploding

dye-pack as required by Federal Rules of Evidence 701 and 702.

---

[12] Although the parties do not invoke evidentiary rules 401 and 402, they discuss the propriety of admitting the photographs in terms of relevance. We note that, of course, only relevant evidence is admissible. Fed. R. Evid. 402. Relevant evidence is defined as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

We review rulings for the admissibility of evidence for abuse of discretion, and Suggs will prevail if he can show that the District Court's decision was "arbitrary, fanciful, or clearly unreasonable." *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007) (citations omitted). To the extent that the decision to admit opinion testimony turned on the District Court's interpretation of Rules 701 or 702, we exercise plenary review. *See Asplundh Mfg. Div. v. Benton Harbor Eng.*, 57 F.3d 1190, 1194–95 (3d Cir. 1995).[13]

Here, the Court decided to admit the photographs after the Government demonstrated that an exploding dye-pack had activated and burned the money following the 2003 robbery. The Government's theory was that the dye-pack caused the burns shown in the photographs, although Suggs reported to a detective that he had burned his hand while cooking. Despite (or because of) the disagreement on the causes of the burn, the Court concluded that the Government established the relevance of the photographs as to whether Suggs possessed the dye-pack soon after the robbery. The Government then introduced testimony in the attempt to prove that dye-packs can cause the types of burns

---

[13] Rule 702 permits expert testimony to assist triers of fact in understanding technical evidence. Fed. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). Rule 701 permits a lay witness to provide opinion evidence. Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.").

apparent in the photographs of Suggs's hand and of charred bills left behind on the bank floor after the robbery. Mike Eppel, a Sales Representative for the company that manufactured and sold the red-dye security pack to the bank in question, *see* App. at 795–96, testified that the explosion device burned hot "enough that the bills that are placed on the pack do char." *Id.* at 802. Given the importance of possession to the question of guilt for robbery here, we have no reason to conclude that the Government did not establish the relevance of the photos or that the District Court's decision to admit them or Eppel's testimony was "arbitrary, fanciful or clearly unreasonable." We therefore discern no abuse of discretion here.

We turn to the question whether the dye-packs could cause the types of burns shown in the photographs and thus required expert medical or lay witness testimony under *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 355 (3d Cir. 1998) (ruling that a new trial was warranted where the knowledge to determine whether the captain of a vessel was negligent in his operation of a sea-vehicle "was beyond the common knowledge possessed by the members of the jury"). Eppel, Suggs maintains, met the requirements of neither Rule 702, in that he had no medical expertise, nor Rule 701, in that he had no "relevant specialized knowledge" to offer an opinion. *See Asplundh Mfg.*, 57 F.3d at 1201–02.

We agree with Suggs's argument on the technical nature of the burns, and that Eppel did not possess the requisite expertise to inform the jury about the capacity of

21

exploding dye-packs to produce the type of burns shown in the photographs. To the extent that the determination whether the dye-packs linked to the burn marks lay beyond the jurors' common knowledge, the Court should have admitted the evidence only alongside the testimony of an expert medical witness. However, in this case, the significance of this concern is diminished by the weight of the other evidence supporting the conviction and by the fact that Suggs had the opportunity to—and did—rebut Eppel's testimony by offering another explanation for the burn marks. As we presume that the jury weighed all of the evidence together, we conclude that the admission of this evidence did not cause a miscarriage of justice and does not warrant a new trial.

### b. Identification testimony of Hughes

Suggs next argues that the District Court erred in refusing to grant a mistrial with respect to two issues related to the identification testimony of Adrienne Hughes, his estranged girlfriend. According to Suggs, Hughes purported to identify him based on his height, weight, and manner from still surveillance photographs of the back of a fully masked person taken in connection with the first bank robbery (Count 1), *see* App. at 298, 488, and this prejudiced him with respect to Counts 3 and 4. Second, he contends that F.B.I. Agent Lash's reference to Hughes's identification for Count 1 in his testimony for Counts 3 and 4 was prejudicial.

We review the denial of a motion for mistrial for abuse of discretion. *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005). In reviewing the denial of the motion

22

on that standard, "three factors guide our analysis: (1) whether [the] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the district court." *Id.*

To be sure, any suggestion that Hughes or anyone else has the expertise to identify a masked person from the back in a still photo is dubious. *See, e.g., United States v. Jackman*, 48 F.3d 1, 5 (1st Cir. 1995) (evidence is only inadmissible when "the photographs are . . . so hopelessly obscure that the witness is no better-suited than the jury to make the identification"). Yet, even if it were error to admit her testimony (if Suggs described the photographs accurately),[14] we see no indication that Suggs was prejudiced by it. He was acquitted on Counts 1 and 2, the robbery for which Hughes offered the identification testimony. In addition, there is no evidence to suggest that her identification had a "prejudicial spillover" effect with respect to Counts 3 and 4. *See United States v. Cross*, 308 F.3d 308, 316–17 (3d Cir. 2002) (holding that prejudice may result if the jury heard evidence related to one count that was inadmissible in relation to another, provided there is evidence that the evidence "affected adversely the verdict on the remaining count"). To the contrary, Suggs's acquittal on the counts to which the identification testimony related suggests that the jury did not give Hughes's testimony much weight; the judge gave limiting instructions with respect to the testimony, *see* App.

---

[14] The photographs are not in the record.

23

1016–17;[15] and, as mentioned before, the other evidence sufficed to sustain a conviction without this testimony.  Under our mistrial analysis in *Lore*, these considerations are enough to convince us that there was no prejudicial error in the Court's rulings concerning Hughes's testimony or the grant of a new trial on these grounds.

### c.     FBI testimony

Suggs also contends that the District Court erred in refusing to grant a mistrial when Agent Lash stated that his job was "to investigate the crime and bring it to a

---

[15] He instructed as follows:

> Now I want to give you a specific instruction as to Adrienne Hughes who identified Mr. Suggs as the robber of one bank concerning the February 22, 2002 robbery which is charged in Count 1 of the superseding indictment.
>
> You will recall that she made this identification, not as an eyewitness to the robbery, but from bank surveillance photographs.  It is obvious that the face of the bank robber is obscure.  Ms. Hughes testified that she could tell that the Defendant was the bank robber depicted in those photographs from the body, size, posture[,] and height of the bank robber in the photographs.  . . .
>
> I instruct you to scrutinize Ms. Hughes'[s] identification and treat it with caution.  Consider carefully the evidence concerning the underlying basis for her identification.  You should also consider whether she has any bias or motivation for her testimony, including any agreements with local police that may have provided a motive for making the identification that was offered at this trial.  After following this instruction, it is up to you to decide on the credibility of Ms. Hughes and what weight to give her testimony.

App. at 1016–17.

conclusion at prosecution, *to identify the guilty party* and then proceed to prosecution," App. at 830 (emphasis added), because the statement was improper and prejudicial.

Applying the three *Lore* factors that guide mistrial analyses here, Suggs's challenge fails because: (1) a single statement by the Agent was in no way "pronounced and persistent;" (2) the other evidence sufficed to establish guilt without the Agent's testimony; and (3) the Court struck the testimony, precluded the Government from asking further questions about the agent's investigation, and issued curative instructions for the jury to ignore the testimony.[16] Thus, we cannot conclude that the Agent's stricken statements warranted a ruling of mistrial, and must instead conclude that there was no abuse of discretion on any of Suggs's Rule 33 challenges.

## III. Sentencing Challenge

Finally, Suggs raises a Sixth Amendment claim as to his sentence. He asserts that

---

[16] Immediately after the Agent offered this testimony, the Court responded as follows:

> I'm going to strike that [testimony]. . . . The jury will
> ignore—I instruct you to ignore that testimony. . . . There's
> no possible indication that because the F.B.I. investigates
> somebody, that they identify a guilty party. . . . [T]he
> purpose of this trial [is] . . . for the government to prove the
> defendant guilty beyond a reasonable doubt. . . . I'm going to
> rule that because of the improper testimony, I'm going to
> preclude [the government attorney] from asking any
> questions of the agent about his investigation of this robbery.

App. at 830–31. In its instructions to the jury at the end of trial, the Court also emphasized the presumption of innocence, App. at 1011, and noted that stricken testimony must be disregarded, App. at 1026.

25

he is entitled to resentencing after *United States v. Booker* because the District Court enhanced his offense level by two levels for a death threat upon judicial factfinding and because it imposed the sentence under a mandatory Guidelines regime.[17]

We held in *United States v. Davis* that we would remand cases where a defendant could show the potential for plain error and prejudice from pre-*Booker* sentences. 407 F.3d 162, 164–66 (3d Cir. 2005) ("[P]ost-*Booker*[,]. . . defendants sentenced under the previously mandatory regime whose sentences are being challenged on direct appeal may be able to demonstrate plain error and prejudice. We will remand such cases for resentencing.") (internal citations, quotation marks, and brackets omitted).

In accordance with *Davis*, we vacate the sentence and remand for re-sentencing in the context of the now-advisory Guidelines regime.[18]

---

[17]Under *Booker*,

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a . . . jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 543 U.S. at 243 (2005) (affirming *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Moreover, *Booker* rendered the Guidelines scheme advisory. *Id.* at 245.

[18] We note that the two-level enhancement increased Suggs's sentence beyond the sentence he would have received without a finding that he made a death threat in connection with the robbery. However, we also note that the enhancement did not increase the sentence beyond the statutory maximum, which would have been a fatal Sixth Amendment violation under *Booker*. Here, the statutory maximum term of imprisonment for each of the counts on which Suggs was convicted for robbery is 20 years (240 months). 18 U.S.C. 2113(a). The enhanced offense level placed Suggs in a Guidelines range of 92 to 115 months, and the Court sentenced him to 110 months' imprisonment—all of which are below the statutory maximum. *See United States v.*

\* \* \* \* \*

In sum, Suggs's challenges to his conviction fail.  He has neither demonstrated that the evidence was insufficient to support his conviction, nor that the trial was fraught with errors, much less the type of prejudicial errors that warrant a new trial.  Accordingly, we affirm the conviction and remand only for resentencing in accordance with *Booker*.

---

*Grier*, 475 F.3d 556, 565 (3d Cir. 2007) (*en banc*).